UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| PRENTIS EARL SMITH, II | § | |
| VS. | § | CIVIL ACTION NO. 2:18-cv-345-RSP |
| MARION CO. SHERIFF'S OFFICE, ET AL | § | |

**MEMORANDUM ORDER**

Before the Court are Defendants' various motions for summary judgment, (Dkt. Nos. 135, 136, 137), and Plaintiff's motions for summary judgment, (Dkt. Nos. 102, 103), in this pending civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is suing (1) the Marion County, Texas, Sheriff's Office, (2) Sheriff David McKnight, (3) the Jefferson Police Department, (4) Chief Gary Amburn, and (5) Sergeant Jason Carroll.

All parties entered consent to proceed before the undersigned United States Magistrate Judge, (Dkt. #11). The Court, having considered the motions, the record, and the applicable law, finds that Defendants' motions for summary judgment must be **GRANTED**, and Plaintiff's motions must be **DENIED**. For the foregoing reasons, this civil action will be **DISMISSED**.

**I. BACKGROUND**

Defendants filed a Notice of Removal, (Dkt. #1), from the Marion County District Court after Smith filed numerous civil rights allegations. Plaintiff was ordered to file a more definite statement, (Dkt. #18). Defendants subsequently filed a notice of Smith's incompetency as determined by a state court criminal proceeding—prompting this Court to administratively close this case until such time as Smith's pending prosecution was concluded or Smith's competency was restored, (Dkt. #21). On April 18, 2022, Plaintiff's motion to reopen his lawsuit, (Dkt. #82),

1

was granted upon restoration of Smith's competency and Defendants were ordered to answer Smith's lawsuit. These motions followed.

## II. SMITH'S ALLEGATIONS

In short, Smith maintains that Defendants engaged in a civil conspiracy to falsely arrest him on five separate occasions. He contends that he was arrested based on a plot to harass him and violate his civil rights. The Court notes that Smith is currently serving a seventy-five-year sentence within the Texas Department of Criminal Judgment (TDCJ) for murder that is seemingly unrelated to the present case and allegations. While Smith's pleadings are difficult to decipher, based on Smith's more definite statement, so far as the Court can discern, Smith alleges that the following incidents constitute false arrests, as follows:

> 1. October 30, 2017—Plaintiff found Facebook messenger messages between Chief Gary Amburn and Plaintiff's wife, Pamela Goynes, where they discuss sexual videos made of Plaintiff against his will, and her concerns that [Plaintiff] may know about the videos. Chief Gary Amburn's response to these crimes was "I'll take care of it he's not doing [expletive] trust me." This is the Chief of Police agreeing to "take care" of the Plaintiff in order to cover up crimes, thereby violating the Plaintiff's civil rights.
>
> 2. November 15, 2017—Plaintiff was the victim of a theft perpetrated by his estranged wife and her daughter [TG] of an SD card of the videos. Sgt. Jason Carroll arrived on the scene and immediately arrested Plaintiff without charge or cause. Plaintiff was taken to the Marion County Jail where he was held without being booked into the jail or charged with a crime for over 24 hours before being released.
>
> 3. December 5, 2017— Plaintiff was home with Pamela Goynes after [TG] left for school. Approximately 8:30 am [TG] was escorted home by school JISD police officer Shawn Cox. At school, [TG] got into a fight with another female student who found the incident humorous. After Officer Cox left the residence [TG] and several others started fighting each other. Pamela Goynes screamed out for help so Plaintiff tried breaking up the fight. At this time Plaintiff told [TG] she was under citizens arrest and gave his phone to Pamela Goynes instructing her to call 911. [TG] continued to fight the plaintiff forcing plaintiff to safely restrain [TG] to the ground where he held her until police arrived. Upon arrival Sgt. Jason Carroll and Chief Gary Amburn immediately conducted a violent felony take down on the Plaintiff. Plaintiff attempted to explain what was going on which was a citizens arrest on an out of control child, but Chief Amburn, and Sgt. Jason Carroll refused to listen to the facts or to contact Officer Cox about [TG's] incidents at the school that morning. The Plaintiff was arrested for injury to a child and was taken to the Marion

County Jail where Plaintiff was served with a protective order restricting him from his phone. Plaintiff was also held three days before being allowed to post bond to be released.

4. December 14, 2017—Plaintiff drove a 1996 Ford F250, that was purchased by Pamela Goynes and the Plaintiff, to the store after dropping Pamela Goynes off at home after a night out together. While pumping gas Plaintiff was being watched by Sgt. Jason Carroll so Plaintiff walked over to Sgt. Carroll's truck to ask what the problem was. Sgt. Carroll told the Plaintiff that the truck was reported stolen. An argument proceeded with Sgt. Carroll claiming that the truck belonged to [another person]. Officer Carroll arrested Plaintiff even though Plaintiff protested that the truck was registered to Pamela Plaintiff's legal wife. Plaintiff was taken to the jail where Chief Gary Amburn and Sheriff David McKnight were waiting when Plaintiff arrived.

5. December 24, 2017—Plaintiff went to the house that he'd shared to move a 2000 Buick Park Avenue to the Plaintiff's new address. Someone had disconnected the starter. As the Plaintiff was working on the car the police arrived. Plaintiff does not know the officer's name Plaintiff approached the officer who told the Plaintiff that he was under arrest for terrorizing. At the same time another officer Alisha Rieght MCSO arrived on scene, and informed the city officer that Pamela Goynes had a warrant for Injury to a child. Plaintiff was booked into the Marion County Jail, and forced to post bond to secure his freedom.

6. February 12, 2018—Plaintiff was arrested again by the same officer as the December 24, 2017 arrest. Plaintiff was arrested on charges of unauthorized use of a motor vehicle, and aggravated assault. Plaintiff has never been informed of the details of the charges. Bond was set at approximately $155,000.00 which the Plaintiff was forced to post. Plaintiff has not in a year and a half heard of any progress on a prosecution or any court appearances.

Dkt. No. 41, pg. 1-7 (Smith's more definite statement).

Smith asserts that his arrests "were not based on the behavior of Plaintiff but instead [sic] based on the desires of Chief Gary Amburn" who he alleges entered into a relationship with his estranged wife. Smith implies that his arrests are not "about a prosecution," but instead concern "covering up" Defendants behavior, (Dkt. No. 34, pg. 3) (amended complaint). He further argues that officers engaged in "nonchalant behavior" towards his safety and civil rights. *Id*. at pg. 4.

### III. MOTIONS FOR SUMMARY JUDGMENT

As mentioned, the parties filed motions for summary judgment. Defendants insist that officers had probable cause to arrest Smith for each and every arrest of which he complains. They further assert that Smith's conspiracy claims fail to state a claim upon which relief may be

3

granted—and that both the Marion County Sheriff's Office and the Jefferson Police Department are not subject to suit under section 1983. Defendants McKnight, Carroll, and Amburn state that they are entitled to qualified immunity.

Within his motions for summary judgment, (Dkt. Nos. 102, 103), Smith asserts that Defendants failed to answer his "complaint with a clarified plea" and that he seeks a finding that his assertions are true, (Dkt. No. 103, pg. 1). The Court notes that Smith did not formally respond to Defendants' motions for summary judgment, but filed a letter to the Court insisting that his case should go to trial and that if the cases were "real charges," then they would have been prosecuted. Smith further explains that "in essence, what was a civil matter was handled as a criminal matter not once but twice," (Dkt. No. 138, pg. 1).

## IV. SUMMARY JUDGMENT EVIDENCE

Defendants filed summary judgment evidence in support of all three of their motions, supported by a business records affidavit. Given Smith's outline of each of his encounters with law enforcement described above, the Court will address the corresponding summary judgment evidence related to each encounter. Importantly, as mentioned, this summary judgment evidence stands uncontroverted.

### A. November 15, 2017, Arrest

As Defendants highlight, the record does not reflect an arrest on November 15, 2017—but does show that Smith was arrested on November 16, 2017. The arrest/booking report indicates Defendant Carroll arrested Smith due to a family disturbance, (Dkt. No. 135-1, pg. 33). Carroll met with Ms. Goynes who advised that Smith "chased her down the roa[d] yelling at her" in Jefferson, Texas. *Id*. After making contact with Smith, Carroll discovered that he had an outstanding warrant out of Caddo Parish, Louisiana and "they would come get him." Smith was

4

then arrested and transported to the Marion County Jail where he was later released to the duty jailer for the outstanding warrants. *Id*. The Caddo Parish bench warrant indicates that Smith was charged with simple battery assault, and on November 17, 2017, a magistrate found that there was probable cause to arrest him based on the confirmed warrant. *Id*. at pg. 35.

    B. December 5, 2017, Arrest

The summary judgment evidence shows that Defendant Carroll arrested Smith on December 5, 2017, for an assault and he was charged with Injury to a Child, (Dkt. No. 135-1, pg. 39). The affidavit submitted for the probable cause determination, signed by a magistrate, indicates that Defendant Carroll was dispatched to 211 West Broadway for an "assault in progress." Upon his arrival, Carroll was met by three individuals—two of whom explained that Smith had Ms. Goynes's daughter "on the ground hitting her with his fists." *Id*. Smith stated that "he was trying to stop her from hitting him and he was making a citizens arrest"—and witnesses explained that Smith was striking her with his fists. The victim was transported to the hospital, and Smith was arrested and transported to the Marion County Jail. *Id*.

Smith appeared before the magistrate within Marion County on December 6, 2017, who determined that probable cause existed for his arrest and entered an order of emergency protection. *Id*. at pg. 40. Moreover, the evidence reveals that the magistrate ordered Smith's further detention after determining that violence would continue if Smith were released from jail. *Id*. at pg. 43. A grand jury indicted Smith for this incident. *Id*. at pg. 44.

    C. December 14, 2017, Arrest

Smith was again arrested by Defendant Carroll on December 14, 2017, in Marion County for unauthorized use of a motor vehicle. A Marion County dispatcher notified Carroll of a possible stolen vehicle at an Exxon gas station. Upon arrival, Carroll noticed a red Ford with a temporary

tag, which "matched the description of a vehicle stolen from Jefferson." *Id*. at pg. 48. Carroll made contact with the driver, whom he knew to be Smith—and asked him to exit the vehicle because it was possibly stolen. Advising Smith that he was being detained until he could confirm, Carroll placed hand restraints on Smith and had him sit in the back of the police vehicle. He then contacted the dispatcher with the VIN number from the vehicle—and the dispatcher confirmed that the vehicle was stolen and contacted the actual owner of the vehicle. Carroll transported Smith to the Marion County Jail where he was released to the jailer without incident, (Dkt. No. 135-1, pg. 48). A magistrate found that probable cause existed to support the charge.

### D. December 24, 2017, Arrest

On December 24, 2017, Officer Gage with the Jefferson Police Department arrested Smith for making terroristic threats. Gage was dispatched to a home for a disturbance and upon arrival, spoke with Ms. Goynes—who advised that Smith "made several threats to harm her by causing serious bodily injury and/or death if she contacted law enforcement for assistance in response to him entering the residence by breaking out a window and crawling through the broken window/window frame with the intent to intimidate/harass, and/or cause alarm for the safety of herself and/or her Mother, who is elderly and disabled." *Id*. at pg. 51.

Officer Gage explained that he was aware of Smith's abusive behavior against Ms. Goynes, as he had responded to the same location on numerous occasions. Given the previous occasions, Gage believed that Smith posed an imminent threat to the safety of Ms. Goynes and her family; he also conducted a routine computer check on Smith and discovered two outstanding warrants for his arrest, which were later confirmed by the Marion County dispatcher. The warrants were active and valid, indicating that Louisiana would extradite Smith. *Id*. Gage arrested Smith for the outstanding warrants and for making terroristic threats. He was later booked into the Marion

County Jail. *Id*. A magistrate found that probable cause existed to arrest Smith for making terroristic threats. *Id*. at pg. 52-53.

### E. February 12, 2018 Arrest

The summary judgment evidence further reflects that Smith was arrested on February 12, 2018, for the unauthorized use of a motor vehicle and aggravated assault based on the existence of outstanding warrants. Specifically, the record illustrates that Officer Gage received information that Smith was within the residence on Broadway and knew Smith had two outstanding warrants for his arrest, (Dkt. No. 135-2). Officer Gage responded to the location, at which point Smith was taken into custody and the warrants were confirmed. He was then transported to the Marion County Jail.

One of the warrants was based on a call to 911 from an individual on December 26, 2017, who reported that a lady at his residence—named Ms. Goynes—had been thrown out of a truck and developed road rash on her knees and elbows. *Id*. at pg. 21. Officer Hayes was dispatched to the individual's home where the individual's wife and Ms. Goynes were present. Ms. Goynes was in apparent discomfort and visibly crying—informing Officer Hayes that Smith woke her up from her sleep "standing over her in the bed and made her get in the truck that was parked outside." *Id*. at pg. 27.

Ms. Goynes explained that Smith grabbed her by the arm and dragged her to the truck and drove her to an unknown location; after informing Smith that she wanted to get out of the truck and did not want to go with him because she was fearful, she opened the door and told Smith to stop. However, Smith accelerated and reached "his right arm and shoved her out of the truck and threw her belongings out as well." *Id*. Ms. Goynes hit the pavement—rolling numerous times and hitting her head, as well as knees and elbows, on the road. During her explanation of the incident,

Ms. Goynes rolled up her pant legs and sleeves, exposing her injuries that also included obvious swelling to her face. Ms. Goynes told Officer Hayes that she feared for her safety and that she wanted to press charges against Smith for stealing the truck that he was not authorized to operate. Law enforcement later discovered the truck, which had been wrecked. Smith was arrested on February 12, 2018, for this incident—and a magistrate determined that probable cause existed to arrest Smith for unauthorized use of a motor vehicle and aggravated assault. *Id*.

## V. LEGAL STANDARDS

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

The United States Court of Appeals for the Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

## VI. DISCUSSION AND ANALYSIS

A review of the summary judgment evidence, viewed in the light most favorable to Smith, demonstrates that the evidence before the Court could not lead to different factual findings and conclusions. Summary judgment in favor of Defendants is appropriate in this case.

<u>1. Marion County Sheriff's Office and Jefferson Police Department</u>

Defendants Marion County Sheriff's Office and Jefferson Police Department move for summary judgment, claiming that they are not subject to suit. The arguments are well-taken. Under the Federal Rules of Civil Procedure, a party to a lawsuit must have the capacity to be sued. Fed. R. Civ. P. 17(b). A department of a local government entity—or a sub-unit of a state agency such as a police or sheriff's department—must "enjoy a separate legal existence" to be subject to a lawsuit. *See Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991). In other words, a plaintiff may not bring a civil rights action against a political agency or department unless such agency or department enjoys a separate and legal existence. *Id*.

Here, the Marion County Sheriff's Department and the Jefferson Police Department have no separate legal existence apart from the county and the city. Accordingly, as Smith offers nothing to suggest otherwise, the offices cannot be sued in their own names. *See Darby*, 939 F.2d at 313; *Barrie v. Nueces Cnty. District Attorney's Office*, 753 F. App'x 260, 264 (5th Cir. 2018) ("Neither party cites a law that has authorized the NCDAO to be sued, nor are we aware of any such law."); *Lane v. Athens Police Dep't*, No. 6:05-cv-498, 2006 WL 1049966 at *3 (E.D. Tex. Mar. 24, 2006) ("While he does sue the Henderson County Jail, the jail is not a separate legal entity and cannot be sued in its own name."). Defendants' motions for summary judgment on this basis are meritorious.

2. False Arrest and Civil Conspiracy

The crux of Smith's lawsuit concerns his claims that Defendants engaged in a civil conspiracy to falsely arrest him numerous times. Specifically, he maintains that he was arrested in the instances outlined above without cause or justification—and that none of his arrests had to do with a prosecution or even his behavior. Because the undisputed summary judgment reveals that law enforcement had probable cause to arrest Smith on each occasion, however, his claims fail to demonstrate a false arrest let alone a constitutional violation.

The United States Court of Appeals for the Fifth Circuit applies the same standard for claims of false imprisonment and false arrest. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). As it appears that Smith was not convicted for the incidents forming the basis for these particular arrests, his claims of false arrest arise under the Fourth Amendment—the right to be free from the unreasonable seizure of one's person. *See Deville v. Mercantel*, 567 F.3d 156, 164 (5th Cir. 2009). In order to establish a false arrest under section 1983, a plaintiff must show that the arresting officers did not have probable cause to arrest him. *See Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2001); *Reed v. Mun. of Taylorsville, Miss.*, 2020 WL 3213419, at *5 (S.D. Miss. Jun. 15, 2020) ("To establish that defendants violated Reed's constitutional rights by arresting her, Reed must show that the officers lacked probable cause.").

Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2002); *see also Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) ("Probable cause for an arrest made without a warrant exists when the totality of facts and circumstances within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to

10

conclude that the suspect had committed an offense.") (internal citations omitted). When considering what a "reasonable person" would conclude, courts take into account the experience and expertise of the law enforcement officers. *See U.S. v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999).

This standard under the Fourth Amendment requires substantially less evidence than that which would be sufficient to support a conviction. *Id*. Indeed, probable cause does not require an actual showing of criminal activity. *See, e.g.*, *Ill. v. Gates*, 462 U.S. 213, 245 (1983) ("But, as discussed previously, … probable cause does not demand the certainty we associate with formal trials."). Probable cause, instead, requires only a "fair probability" that an offense was committed—or is being committed. *Garcia*, 179 F.3d at 269. The "fair probability" standard requires more than bare suspicion, "but it need not reach the fifty percent mark." *Id*. Accordingly, here, Smith must show that law enforcement did not possess probable cause to arrest him for the incidents of which he complains.

Furthermore, while not absolute, when the facts supporting an arrest are placed before an independent intermediary—such as a magistrate or a grand jury—the intermediary's decision breaks the chain of causation for false arrest, thereby "insulating the initiating party." *Deville*, 567 F.3d at 170; *see also Murray v. Earle*, 405 F.3d 278 (5th Cir. 2005) ("when a neutral intermediary, such as a justice of the peace, reviews the facts and allows a case to go forward, such an act breaks the chain of causation.") (internal citation and quotations omitted). In other words, the intermediary's determination of probable cause—either before or after the arrest—satisfies the Constitution and the inquiry ends there. *Id*. The Court notes that Smith makes no complaint about the independent intermediary or the court process.

Here, for each of the five arrests outlined above, law enforcement had probable cause to arrest Smith. Smith makes no showing that any Defendant "falsely" arrested him. With respect to the November 2017 arrest, Smith was arrested for simple battery pursuant to an outstanding warrant from Caddo Parish, Louisiana. The magistrate—an independent intermediary—determined that probable cause existed based on the confirmed warrant, (Dkt. No. 135-1, pg. 35). Probable cause existed to arrest Smith on this basis based on the outstanding warrant—as a reasonable person could conclude that a crime was committed in Caddo Parish.

Smith was again arrested on December 5, 2017, for assault and charged with Injury to a Child. The undisputed summary judgment evidence reveals that law enforcement had probable cause to arrest Smith—as Defendant Carroll witnessed Smith hitting a young female with his fists, which was confirmed by other witnesses at the scene as well. A magistrate determined that probable cause existed for the arrest, and a grand jury indicted Smith for Injury to a Child. *Id*. at pg. 44. Because an indictment "conclusively determines the existence of probable cause," Smith was not falsely arrested. *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (holding that an indictment "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry"); *see also Campbell v. City of San Antonio*, 43 F.3d 973, 976 (5th Cir. 1995) ("She also conceded that the warrant was based on a grand jury indictment, which itself establishes probable cause.").

On December 14, 2017, Smith was arrested again—some nine days later. Dispatch notified Defendant Carroll of a possible stolen vehicle at a gas station, and made contact with the driver who was identified as Smith. A magistrate determined that probable cause existed. After confirming that the vehicle was stolen, Smith was arrested for unauthorized use of a motor vehicle.

Given that the vehicle was confirmed stolen—and the actual owner was contacted—probable cause existed to arrest Smith for this offense.

Days later, Smith was arrested again for making terroristic threats. Law enforcement was dispatched to the home for a disturbance and, upon arrival, the victim explained that Smith threatened to harm her if she contacted law enforcement after Smith entered the residence by breaking a window with the intent to harass/intimidate her. Law enforcement believed that Smith posed an imminent threat to the victim based on previous interactions with him—and further confirmed that two outstanding warrants existed for Smith's arrest. Once again, a magistrate determined that probable cause existed. Smith was not "falsely" arrested.

Finally, the undisputed summary judgment evidence reveals that law enforcement had probable cause to arrest Smith in February 2018 for assault and unauthorized use of a motor vehicle. The evidence illustrates that a concerned citizen called the police on December 26, 2017, reporting that the victim had been thrown out of a truck—suffering several injuries—that Smith was driving without authorization to do so. The officer witnessed the victim's injuries, which were consistent with "road rash." The magistrate determined that probable cause existed, and the evidence shows that a reasonable person could certainly conclude that Smith committed these offenses. Consequently, because probable cause existed to arrest Smith for each of these offenses, his false arrest claims are without merit. Defendants' motions for summary judgment on these bases are well-taken.

Smith further alleges that Defendants conspired to violate his constitutional rights and arrest him. In order to show a civil conspiracy, Smith must prove an actual deprivation of his constitutional rights. *See Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). "The elements of civil conspiracy are the following:

13

(1) an actual violation of a right protected under section 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Conclusory allegations of a conspiracy—absent reference to material facts—do not state a cause of action under section 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (en banc).

Here, however, Smith makes no showing of a civil conspiracy to violate his Fourth Amendment rights. As explained above, each of the arrests was premised upon a finding of probable cause. Smith further failed to identify facts establishing that Defendants collectively agreed to falsely arrest him. *See Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) (internal citations omitted). Consequently, Smith's allegations concerning a civil conspiracy are without merit. Smith has wholly failed to show a violation to his constitutional rights.

### 3. Failure to Provide Law Enforcement Services

Smith makes reference to a lack of law enforcement when he called 911 when he was fearful for his safety based on an individual inside his residence. He also complains that the Sheriff informed him that he could not "have a deputy" and would not investigate burglaries and property crimes.

Defendants correctly argue that these claims are without merit. The United States Supreme Court held that the Due Process Clause does not confer a right to government aid—and does not require the State to protect life, liberty, or property against invasion by private actors. *See Deshaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989) ("The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."). Even where government aid may be necessary to protect a citizen's life, liberty, or property from the actions of private individuals, the constitution does not confer an

enforceable right to such services. *See Beltran v. City of El Paso*, 367 F.3d 299, 304 (5th Cir. 2004) ("[A] State's failure to protect an individual against private violence does not violate the Due Process Clause.") (citing *Deshaney*, 489 U.S. at 197). Accordingly, these claims are without merit.

### 4. Dangerous Jail Conditions

Smith contends that he was placed in a dangerous or unsafe environment when he was booked into the Marion County Jail, because he was housed "with known racists," (Dkt. No. 4, pg. 3). He elaborates no further.

An official is liable for the failure to protect a detainee only if that official acts with deliberate indifference, which is difficult to establish. *Farmer v. Brennan*, 511 U.S. 825 (1994). In order to show that officials were deliberately indifferent to a need for protection, the plaintiff must prove "that the official *actually knew* of a substantial risk of serious harm and *failed to act*." *Adeleke v. Heaton*, 352 F. App'x 904, 907 (5th Cir. 2009) (per curiam) (unpublished) (emphasis added).

Here, Smith makes no such showing. He offers no facts to suggest that any named Defendant actually knew of a substantial risk of serious harm and then failed to act on that knowledge. Because he presented no facts indicating that he was at a substantial risk of serious harm within the Marion County Jail—let alone that any defendant knew, should have known, and then failed to act—this claim is without merit. He also fails to plead harm.

### 5. Qualified Immunity

Defendants move for qualified immunity. The individual law enforcement officers in this lawsuit—Defendants McKnight, Amburn, and Carroll—are entitled to qualified immunity. The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When applying the second prong, the court examines whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (internal alterations and quotation marks omitted). The Fifth Circuit has observed that an official:

> does not lose qualified immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful.

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted).

Here, Smith failed to establish a constitutional violation. He therefore failed to clear the first hurdle. Moreover, even if he had alleged a constitutional violation, he failed to show that any Defendant acted unreasonably. There was probable cause for each of the arrests of which he complains, and his remaining claims are similarly without merit.

The Court recognizes that Smith's TDCJ record does not show that he is currently imprisoned for the offenses that he complains about in this lawsuit. However, the Constitution does not guarantee that only the guilty will be arrested—otherwise, section 1983 would provide a cause of action for every defendant acquitted, not prosecuted, or released. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979); *see also Sanchez v. Swyden*, 139 F.3d 464, 468 n.9 (5th Cir. 1998) ("This conclusion makes perfect sense in light of the important policy underlying qualified immunity, namely, that public officials should not be deterred from discharging their professional obligations out of fear of civil liability."). Smith has not identified a constitutional violation and, as a result, Defendants McKnight, Amburn, and Carroll are entitled to qualified immunity.

Therefore, consistent with the foregoing analyses, Defendants' motions for summary judgment, (Dkt. Nos. 135, 136, 137) are **GRANTED**. Plaintiff Smith's motions for summary judgment, (Dkt. Nos. 102, 103), are **DENIED**. This case is **DISMISSED** with prejudice. Any and all other motions which may be pending in this lawsuit are hereby **DENIED**.

**SIGNED this 14th day of February, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE